Powell, &c., v. Conn, &c.

CASE 106—PETITION EQUITY—JUNE 13.

# Powell, &c., v. Conn, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. SLAVES—RIGHT TO INHERIT.—A slave having been purchased by her mother, who was a free woman, the natural presumption is that the mother purchased her daughter for the purpose of giving her the same freedom that she herself enjoyed, and a son born to the daughter after she was thus purchased by her mother having been treated from his birth as free, the presumption, after the lapse of fifty years, is that his mother was legally manumitted by her mother, and that he was born free and entitled to inherit from his grandmother at her death, his mother being dead.

2. SAME.—The statute of 1866 conferring the right of inheritance upon persons who had been slaves prior to the thirteenth constitutional amendment did not relate back and entitle such persons to inherit jointly, as in case of afterborn children, with brothers and sisters, who, having been born free, had, prior to the abolition of slavery, inherited an estate which their brothers and sisters, who were then slaves, would have inherited jointly with them if all had been born free.

W. W. THUM AND BURTON VANCE FOR APPELLANTS.

1. To constitute adverse possession against a co-tenant there must be an ouster, and the adverse holding must be made known to the co-tenant. (Larman v. Huey's Heirs, 13 B. M., 443; Riggs v. Dooley, 7 B. M., 239; Gill v. Fauntleroy, 8 B. M., 186; Young v. Adams, 14 B. M., 130; Gossom v. Donaldson, 18 B. M., 230; Wood on Limitation, sec. 266; Thomas v. Pickering, 13 Me., 337; Forward v. Dietz, 32 Pa. St., 69; Gill, &c., v. Dewitt, &c., 7 Ky. Law Rep., 387.)

Proof of notice to the co-tenants of the adverse holding must be of a clear and convincing character. (Glass v. Glass, 7 Ky. Law Rep., 437.)

The taking of *all* the profits by the tenant in possession is not sufficient to indicate adverse holding. (Higbee v. Rice, 5 Mass., 351; Bolton v. Hamilton, 2 W. & S., 294; Calhoun v. Cook, 9 Pa. St., 226;

Chambers v. Pleak, 6 Dana, 426; 2 Cruise's Digest, 318; 1 Cruise's Digest, 358; Starkie's Evidence, vol. 2, 508–9.)

The fact that the tenant in possession has mortgaged the entire property is not conclusive of adverse claim. (Wilson v. Calinshaw, 13 Pa. St., 276; Harmon v. Hannah, 9 Gratt., Va., 146; Wood on Limitation, sec. 266.)

The mere cutting of timber does not constitute an ouster. (Wood on Limitation, p. 560; Harmon v. Gardiner Hemp, S. C., 389; McPherson v. Seguine, 3 Dev., N. C., 153; Wait v. Richardson, 33 Vt., 190; Booth v. Adams, 11 Vt., 156.)

Payment of taxes is not evidence of adverse possession. (59 Iowa, 371.)

Cases in which evidence was not sufficient to make out defense of adverse possession. (Bryan v. City of East St. Louis, 12 Ill. App., 390; Flock v. Wyatt, 49 Iowa, 467; Barnes v. Byrne, 45 Iowa, 285; Hume v. Long, 53 Iowa, 303; Alexander v. Wheeler, 69 Ala., 332.)

2. The fact that appellants were slaves at the time the descent was cast does not prevent them from now claiming as co-tenants. The fourteenth amendment to the constitution of the United States has forever done away with all discrimination against the colored race on account of their color or race. (Strander v. West Virginia, 10 Otto, 303; ex parte Va., 10 Otto, 339.)

JOHN S. JACKMAN FOR APPELLEES.

1. The adverse holding by Jake from the death of his grandmother in 1852 to the time the land was sold and conveyed from him by order of court in 1877, and the continued adverse holding on the part of the subsequent grantees, making in all more than thirty-three years, was of such notorious character that even though the appellants be placed on the footing of co-tenants the statute is bound to prevail. Proof of *actual notice* to appellants of the adverse holding was not necessary to enable appellees to avail themselves of the plea of limitation. (Farrow v. Edmundson, 4 B. Mon., 606; Riggs v. Dooley, 7 B. Mon., 239; Russell's Heirs v. Mark's Heirs, 3 Met., 45.)

2. Jake testifies that he was holding the land for himself and the other heirs, but this claim was never made by him until the land was sold, and the exceptions to his deposition should have been sustained as to these statements. He had no right to defame the title which he had always claimed. (Stemmons v. Duncan, 9 B. Mon., 351; Gatliff v. Rose, 8 B. Mon., 632; Merriwether v. Herran, 8 B. Mon., 167; Ring v. Gray, 6 B. Mon., 371.)

3. The proof of heirship is not of such convincing character as to justify the property rights of third and innocent parties being disturbed at

this late date. The burden was upon appellants of showing not only descent, but descent from those capable of inheriting.

4. The effect of the amendments to the constitution of the United States and of the statute of 1866 was not retroactive.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, Conn, being in the possession of the sixty-two-acre tract of land in controversy, and claiming to be the owner of it, brought this action, in conjunction with James Williamson, his vendor, against Jacob Coleman, a colored man, and the unknown heirs of Lydia Hayburn, all colored, to quiet the appellee's title to said land. The appellants, claiming to be the heirs of Lydia Hayburn, upon their petition were made defendants to said action, and claimed to be the owners of said land, except one-fourth, which belonged to Jacob Coleman. The entire tract was sold at commissioner's sale as the property of Jacob Coleman, and was purchased by the appellee, Williamson, who sold the same to the appellee, Conn.

Lydia Hayburn was at one time a slave, but she, in some way, not explained by the record, obtained her freedom. As far back as 1839 she was a free woman, and evidently had been free several years. At said date she owned the tract of land in controversy; also at said date she had had only two children, girls, Rachel and Annie, who were born slaves; that prior to said date she had purchased both of said children; that Rachel (who died prior to 1839), after she was purchased by her mother, gave birth to Jacob Coleman; she also gave birth to a daughter, and she died leaving bastard children, one of whom is a claimant of one-fourth of the land in controversy, but by reason of the stain of bastardy, Jacob Coleman being legitimate, he can not recover in this

action. Besides, it is probable that said daughter was born in slavery, and was never manumitted.

Annie died in about 1848, before her mother, Lydia Hayburn. Annie was born in slavery, and while she was a slave she had children, the descendants of whom are claimants of a portion of this property. Annie's children were slaves until freed by the thirteenth constitutional amendment. According to the weight of the evidence Annie was never married, consequently her children were bastards, whose descendants can not inherit from their grandmother as against Jacob Coleman.

Besides, the proof is conclusive that Annie gave birth to no child or children after she was purchased by her mother, and that the children born to her were born slaves, and continued to be slaves until freed by the thirteenth constitutional amendment; also, it is established by the weight of the evidence that Rachel's daughter was born and died in slavery; also, it is conclusive that Jacob Coleman was born after his mother was purchased by her mother, and he was from his birth up recognized as free. But it is said that his mother was the slave of her mother, consequently he was not born free, nor did he obtain his freedom until freed by the thirteenth constitutional amendment, therefore he could not acquire title, by inheritance, to said land, nor was he capable of holding possession of it in his own right until he was freed by the thirteenth constitutional amendment, and empowered to inherit by the statute of 1866, at which time the appellants were also freed and rendered capable of inheriting said land jointly with Jacob, and his possession of the land was their possession. We do

not assent to the proposition that Jacob was not born free. His grandmother had the legal right to purchase his mother; she also could, by a writing, give his mother her freedom. The natural presumption is, that the mother of Jacob's mother did not purchase her for the purpose of holding her in bondage, but to give her the same freedom that she herself enjoyed. Jacob from his birth was treated, both by the family, the public and the law, as having been born free. The presumption is, after the lapse of over fifty years, that Jacob's mother was legally manumitted by her mother, and that Jacob was, in law and in fact, born free, and entitled to inherit the land from his grandmother at her death, which occurred in 1852, at which time the appellants, or the persons through whom they claim, were all in slavery, and were not capable of inheriting or holding any part of the estate; and Jacob being the only person capable of inheriting, took the title to the entire estate at the death of his grandmother, which occurred in 1852. It is clear, from the proof, that he, at the death of his grandmother, took the possession of the entire tract of land, and held it in his own right until it was sold from him by the court's commissioner. At the time that the inheritance was cast upon Jacob the appellants were property, and not capable of inheriting or holding estate; by the laws then in force they were doomed to perpetual bondage, and the inheritance was cast upon Jacob without, as it then appeared, a possibility of the appellants ever becoming co-heirs with him. Unlike a child being born after the death of its father, whose right of inheritance relates back to the death of its father, the appellants were posi-

tively denied the right to share the property with Jacob. They themselves were property, and had no inheritable blood whatever. Jacob could not, if he would, have cast any part of his inheritance upon them. Their unexpected freedom years afterward, and the statute of the State giving them the right to inherit, did not and could not have the effect of relating back to the time that Jacob acquired this property by inheritance from his grandmother. Unlike the case of an afterborn child, whose right the then living children take subject to, Jacob was the sole heir to this estate, and under the law as it then was the appellants, though living, had no legal parentage, no inheritable blood, and could not inherit, with him, any part of the estate. The title vested in him absolutely. No defeasance whatever, directly, indirectly or remotely, attached to the estate on behalf of the appellants. The title was not cast upon him with a view even to the possibility of the appellants ever becoming co-heirs with him. They were positively and irrevocably, as the law then stood, excluded from the right of inheritance. Therefore, their right under the statute of 1866 to inherit can not constitutionally relate back to the death of Lydia Hayburn, so as to reach this property, the absolute and unconditional title to which was, at the time, in Jacob.

The judgment is affirmed.